**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **Lakisha Barr,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 26 C 69** |
| **v.** | ) | |
| | ) | **Judge Jorge Alonso** |
| **DFS Corporate Services, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**ORDER**

Defendants' motion to dismiss [21] is granted. Plaintiff's complaint is dismissed without prejudice. Plaintiff may file an amended complaint by 10/30/26. If she does not file an amended complaint by that date, this case will be dismissed for want of prosecution.

**STATEMENT**

Plaintiff, Lakisha Barr, *pro se*, filed this suit arising out of her employment and eventual termination by Defendant, DFS Corporate Services ("DFS"). The defendants include not only her employer, which she also sometimes refers to by the name of its parent company, "Discover Financial Services," but also three individuals who had managerial positions there, Darryl K. Carr, Dorlisa Marshal, and Cecilia Suh.

Plaintiff submitted a form complaint for employment discrimination.[1] She checked the box for Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e–2000e-17, as the basis for jurisdiction. Regarding the discriminatory conduct at issue, she checked boxes for termination of employment, failure to promote, and retaliation, and she wrote in "computer fraud," under 18 U.S.C. § 1030. She omitted to check any boxes to indicate which protected characteristics were the basis for discrimination against her. In the space for narrating the facts of the case, Plaintiff typed the following:

> Computer Fraud- 18 U.S.C 1030 which consists of unauthorized access to my work computer at Discover Financial Services (Evidence of 4 other computers that were logged into my laptop which is against the Code of Conduct at Discover and Company Policy). This was reported to SIOC but nothing was done. In addition, my computer always reported me working from a location that I was not residing at. Once reported, nothing was done by SIOC as well. These locations included New York and Ashburn, VA. In addition, Brad Gessner and Satya Kola were running payroll jobs in a parallel payroll environment using the Payroll Teams

[1] Available at https://www.uscourts.gov/sites/default/files/complaint_for_employment_discrimination.pdf.

> access by proxying as one of the payroll team members which was a violation of the Code of Conduct.
>
> Wrongful Termination under improper leadership - Firing was not based on any evidence. There were ER Investigations done by Alice Isaac and all my co-workers (written statements documented by the EEOC) complained about the leadership of Darryl K. Carr. The result was me (Lakisha Barr) being terminated from employment on April 7, 2025. In addition, I was fired by Dorlisa Marshal in which prior I reported to her, Cecilia Suh and HR Risk a fraudulent company which was identified by an IRS notice that I reviewed in Payroll (copy of notice on file with the EEOC). I followed-up with the said parties and no response was received during my employment. The EEOC Company Position Response was drafted by Darryl K. Carr although I was fired by Dorlisa Marshal. In addition, Mr. Carr position statement mentioned that I refused to approve a 2-million-dollar invoice, which is true because I knew nothing about the invoice and I felt uncomfortable approving an invoice for that amount with no details being provided. Darryl K. Carr mentioned that I refused to approve the invoice in his position statement which supports my statement above.
>
> Negligence - Darryl K. Carr was hired and told the Payroll Team he was not there to perform any work but to "appease leadership" although the Sr. Payroll Manager position had responsibilities that required action on behalf of the Sr. Payroll Manager. Also, Darryl K. Carr was hired as the Sr. Payroll Manager, but on his emails, he had listed the job title Sr. Manager People Services (copy of screenprint from emails saved as evidence for support). In addition, I interviewed for the Sr. Manager Payroll position after June 3, 2025. Dorlisa Marshal had Katie Konvicka, recruiter from Discover Financial Services, reach out to me, but after interviewing for the position, I found out the position was filled back in May of 2025. Therefore, I interviewed for a position that was already filled.
>
> Breach of employment contract - Terminated for no valid reason. Initial termination by Dorlisa Marshal indicated Behavior. After filing for Unemployment with the State of Illinois the reason was changed to Lack of Work. Statements from former co-workers indicated that 6 contractor employees were hired to do the work I previously was doing.
>
> Discrimination/Harassment - Based on Title VII of the Civil Rights Act of 1964 in reference to statu[t]es for job assignments and other conditions of employment at Discover Financial Services (Parent Company of DFS Corporate Services LLC) Darryl K. Carr harassed me daily to perform his work duties that were listed on his job profile as the Sr. Payroll Manager which included reviewing audit and compliance controls related to payroll processing. There were other items that was forced upon me that were a part of his job duties. When questioned Darryl K. Carr indicated that "I'm the manager and you will have to do what I tell you to do regardless!"

(Compl. at 5, Dkt. No. 1.)

Defendants have moved to dismiss. Plaintiff filed a motion for summary judgment and a brief in opposition to the motion to dismiss, which largely refers to the motion for summary

judgment. The Court denied the motion for summary judgment as premature, but it has considered the facts and arguments asserted in support of that motion as part of Plaintiff's response to the motion to dismiss.

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests whether the complaint states a claim on which relief may be granted. *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). To state a claim, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Because Plaintiff is proceeding *pro se*, the Court construes her complaint liberally and holds it to a less exacting standard than it would a formal pleading drafted by an attorney. *See Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1027-28 (7th Cir. 2013) (citing *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011)). Still, Plaintiff must give each defendant "fair notice of what the claim is and the grounds upon which it rests," *Twombly*, 550 U.S. at 555 (cleaned up), by including enough factual detail to "present a story that holds together." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403-04 (7th Cir. 2010). To meet this requirement, Plaintiff must "do better than putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to her that *might* be redressed by the law." *Id.* at 403. The Court accepts the plaintiff's factual allegations as true, but it need not "accept as true legal conclusions . . . supported by mere conclusory statements," *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (cleaned up), and the claim is not facially plausible if the plaintiff does not plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Plaintiff's *pro se* complaint is difficult to interpret, but she seemingly asserts five claims: "computer fraud" under 18 U.S.C. 1030, wrongful termination, negligence, breach of employment contract, and discrimination based on "harassment" under Title VII. She does not state a claim under any of these theories.

The Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, "is mostly a criminal statute," but in subsection (g), "it provides for a private right of action." *ExactLogix, Inc. v. JobProgress, LLC*, 508 F. Supp. 3d 254, 262 (N.D. Ill. 2020). But the "scope" of the CFAA's civil cause of action "has always been limited." *Hancock v. Cnty. of Rensselaer*, 882 F.3d 58, 63 (2d Cir. 2018). "To state a claim under the CFAA, a plaintiff must allege (1) damage or loss (2) caused by (3) a violation of one of the substantive provisions set forth in § 1030(a), and (4) conduct involving one of the factors of harm set forth in § 1030(c)(4)(A)(i)(I)-(V)." *GCM Partners, LLC v. Online MD Ltd.*, No. 20 CV 6401, 2025 WL 2576808, at *3 (N.D. Ill. Sept. 5, 2025). None of the substantive provisions in § 1030(a) appear to be implicated here. The gist of Plaintiff's computer fraud claim appears to lie in Defendants' "unauthorized access" to her "work computer," but Defendants consist of her employer and certain of its managerial-level employees. The Court fails to see how their access to her "work computer" could be "without authorization," as the statute requires; after all, the computer in question belonged to Defendant DFS, for whom the other defendants held senior roles. Additionally, none of the § 1030(c)(4)(A)(i) "factors of harm" are relevant here; indeed, the Court cannot tell *what* harm Defendants' access to her work computer is meant to have caused Plaintiff.

Plaintiff claims "wrongful termination" because her "[f]iring was not based on any evidence." That may be, but "[t]he presumption in Illinois is that employment is at-will." *Rujawitz v. Martin*, 561 F.3d 685, 688 (7th Cir. 2009). Even if Defendants' reasons for firing Plaintiff were unfounded, or indeed if Defendants had no reason for firing her, that does not state a claim to relief, by itself. Relatedly, Plaintiff purports to assert a claim for "[b]reach of employment contract," but her use of this term appears to be as a mere legal label or conclusion; she does not plausibly allege that there was any contract between herself and her employer or what its terms were.

Plaintiff's negligence claim appears to be based on the contention that DFS hired Defendant Carr based on a sham hiring process, although he had no intention of working hard enough to fulfill his job duties. But even if so, the Court fails to see any "particular unfitness of the employee" that caused an injury to Plaintiff and would have "rendered the plaintiff's injury foreseeable to a person of ordinary prudence in the employer's position." *Van Horne v. Muller*, 705 N.E.2d 898, 906 (Ill. 1998). In her motion for summary judgment, Plaintiff seems to characterize the negligence as rooted in DFS's interviewing her for Mr. Carr's position without any serious intention of considering her for the position. (Mot. for Summ. J. at 2-3, Dkt. No. 26.) But the Court fails to see what duty DFS owed Plaintiff in this regard, what DFS did to breach any such duty, or how the breach harmed Plaintiff in a way for which the law provides a remedy. The only injury the Court gleans from the complaint is Plaintiff's termination, but Plaintiff has not explained, and the Court does not see, how the fact that Mr. Carr allegedly intended to delegate work to other employees led, *per se*, to Plaintiff's termination. Plaintiff's claim is "no more than a threadbare recital of general unfitness," as opposed to particularized unfitness, "which is not enough to defeat a motion to dismiss." *Reese v. Connors*, No. 24-CV-02262-SPM, 2025 WL 1026476, at *2 (S.D. Ill. Apr. 7, 2025) (citing *Van Horne*, 705 N.E.2d at 904-05).

Finally, the gist of Plaintiff's "Discrimination/Harassment" claim under Title VII appears to be that Defendant Carr "harassed" Plaintiff by forcing her to perform his job duties for him. This falls far short of "harassment" or a hostile work environment under Title VII, which is reserved for complaints of a workplace "permeated with . . . intimidation, ridicule, and insult," not "complaints about overwork," *Boss v. Castro*, 816 F.3d 910, 920 (7th Cir. 2016), or "difficulties with managers" that amount to no more than "normal workplace friction," *Herron v. DaimlerChrysler Corp.*, 388 F.3d 293, 303 (7th Cir. 2004).

Additionally, Plaintiff never provides any reason to connect any of her alleged mistreatment, including her termination, to discrimination based on any protected characteristic or membership in any protected class. As stated above, although Plaintiff used a form complaint for employment discrimination, she did not check any box to indicate that she was asserting a basis for discrimination in any particular characteristic, and the narrative allegations in the subsequent section of the complaint provide no more clarity in that regard. The only place in the record that the Court is aware of where Plaintiff identifies any basis for discrimination is in the Charge of Discrimination that she filed with the Equal Employment Opportunity Commission/Illinois Department of Human Rights, in which she states that she believes she has been discriminated against based on her sex, as well as in retaliation for protected activity, although she never describes any complaints about sex discrimination made to Defendants. (*See* Defs.' Br. in Supp. of Mot. to Dismiss, Ex. 1, Dkt. No. 23-1.) At most, the complaint might be read to allege that there

were complaints about Mr. Carr's management, but there are no allegations of complaints about sex discrimination. If Plaintiff intends to assert a Title VII claim, she has to "advance plausible allegations that she experienced discrimination because of her protected characteristics." *Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774, 776 (7th Cir. 2022). The pleading burden for employment discrimination plaintiffs is not onerous, but it is not enough for them to state that they were fired despite the lack of any disciplinary record against them. *See id.* at 775. "There must be some *facts* that make [an employment discrimination] contention plausible" by "connecting" the adverse employment action to the plaintiff's protected characteristic(s). *Id.* at 776. Plaintiff cites none.

Indeed, despite how it is captioned, Plaintiff's complaint does not have the flavor of a discrimination complaint at all. The gist seems to be, rather, that she was fired although she had done nothing wrong, and actually, if anyone did anything wrong, it was the people who fired her. She uses the term "whistleblower" in her opposition filing (Dkt. No. 31), and she also uses the term "retaliation" in various filings, but she does not elaborate on the idea by identifying any occasions in which she engaged in protected activity by reporting wrongdoing, nor does she identify any particular wrongdoing that was the subject of the protected activity. The closest she comes is to state that she "reported a company that didn't appear to be affiliated with Discover . . . upon receipt of an IRS Notice that listed the Company address of Discover Bank, but in no way fashion or form did the said Company have any affiliation with Discover Financial Services and its subsidiaries." (Mot. for Summ. J. at 7, Dkt. No. 26.) But there is nowhere near enough detail to to plausibly allege a whistleblower or retaliation claim in this context, which requires Plaintiff to have had an "objectively reasonable" belief that she was reporting misconduct rising to the level of a violation of law, and that her reports caused her termination. *See Steinfeld v. Jones Lang Lasalle Americas, Inc.*, No. 20 CV 5838, 2026 WL 878334, at *6-8 (N.D. Ill. Mar. 30, 2026) (citing *Harp v. Charter Commc'ns, Inc.*, 558 F.3d 722, 723-26 (7th Cir. 2009)). Plaintiff has not plausibly alleged what the theory of her employer's wrongdoing was with respect to this "company" or why she believes her firing was related to anything she learned about this or any other matter. More broadly, she has not plausibly alleged why her firing entitles her to relief under the law, or why she is entitled to relief for any other reason.

The Court notes that Plaintiff is proceeding *in forma pauperis*, which means the Court performed an initial screening of her complaint for failure to state a claim, and, in the absence of adversarial testing, it allowed the complaint to proceed. (*See* Jan. 12, 2026 Order, Dkt. No. 6.) Nothing in that preliminary determination forecloses the arguments Defendants make now. "'[W]hen presented with a motion to dismiss, the non-moving party must proffer some legal basis to support his cause of action.'" *Keating v. City of Waukegan*, No. 22 CV 5488, 2024 WL 2882581, at *6 (N.D. Ill. June 7, 2024) (quoting *Stransky v. Cummins Engine Co.*, 51 F.3d 1329, 1335 (7th Cir. 1995)). "[E]ven a complaint that passes muster under the liberal notice pleading requirements of Federal Rule of Civil Procedure 8(a)(2) can be subject to dismissal if a plaintiff does not provide argument in support of the legal adequacy of the complaint." *Farhan v. 2715 NMA LLC*, 161 F.4th 475, 484 (7th Cir. 2025) (internal quotation marks omitted). In response to the motion to dismiss, Plaintiff never articulated any legal theory on which she could plausibly be entitled to relief based on the facts alleged.

Defendant argues that Plaintiff also fails to state a claim based on certain other theories, but Defendant appears to be raising these issues in an abundance of caution, as the Court does not

read Plaintiff's complaint to even attempt to assert these claims. In any event, the Court agrees with Defendant that Plaintiff does not state a claim under any theory. The complaint lacks sufficient factual detail to raise any right to relief above the speculative level. For all the above-stated reasons, Defendants' motion to dismiss is granted. Courts should typically give a plaintiff "at least one opportunity to amend [the] complaint," unless "it is certain that amendment would be futile or otherwise unwarranted." *Zimmerman v. Bornick*, 25 F.4th 491, 494 (7th Cir. 2022). The Court cannot say that the complaint "suffer[s] from such obviously incurable defects" that Plaintiff cannot possibly state a claim. *Id.* Therefore, the dismissal is without prejudice and with leave to file an amended complaint.

**SO ORDERED.**

**ENTERED: October 5, 2026**



**HON. JORGE ALONSO**
**United States District Judge**